```
                    UNITED STATES BANKRUPTCY COURT
                   FOR THE NORTHERN DISTRICT OF IOWA


IN RE:                          )
                                )       Chapter 7
DAYLE W. CAMPBELL and           )
KELLI M. CAMPBELL,              )
                                )       Bankruptcy No. 06-01656
      Debtors.                  )
```

**ORDER RE: U.S. TRUSTEE'S MOTION TO DISMISS**

This matter came before the undersigned on April 3, 2007 pursuant to assignment. Debtors Dayle and Kelli Campbell were represented by Attorney Steven Klesner. The U.S. Trustee was represented by Attorney John Schmillen. After the presentation of evidence and argument, the Court took the matter under advisement. The time for filing briefs has now passed and this matter is ready for resolution. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

**STATEMENT OF THE CASE**

The U.S. Trustee asserts the case should be dismissed because the presumption of abuse arises under 11 U.S.C. § 707(b)(2) or, in the alternative, dismissal is appropriate under § 707(b)(3)(B). With changes to Form 22A in the areas relating to vehicle payments and 401(k) loan payments, the U.S. Trustee argues Debtors have monthly disposable income of $847.20. Thus, the presumption of abuse arises under § 707(b)(2) and Debtors have the ability to pay requiring dismissal under § 707(b)(3)(B). Debtors resist dismissal.

**FINDINGS OF FACT**

Debtors have annual gross income of approximately $109,000. They both work for Proctor & Gamble and have done so for many years. Mr. Campbell is 45 and Mrs. Campbell is 34 years old.

The balances in Debtors' two 401(k) accounts with Proctor & Gamble total approximately $550,000. The value of their house is approximately $185,000 and they drive newer vehicles valued at approximately $40,000. Debtors filed their chapter 7 petition on December 27, 2006. Their schedules show they have more than $91,000 in unsecured debt, which is mostly from credit card accounts. They also owe approximately $236,000 which is secured by their home and/or vehicles. Jennifer Kline testified for the U.S. Trustee that Debtors' high income, newer vehicles and large

401(k) balance alerted her to take a close look at Debtors' bankruptcy filing.

Because Debtors' annual income exceeds the applicable median family income, they completed all of Form 22A. Debtors' calculations both on their original Form 22A and on their Amended Form 22A indicate they have no monthly disposable income. The U.S. Trustee takes issue with two specific areas: 1) vehicle ownership costs and 2) 401(k) loan repayments. Based on the record presented, the Court will accept the U.S. Trustee's other adjustments to Form 22A without further discussion. These relate to Mr. Campbell's monthly income (line 3), inclusion of taxes and insurance in Debtors' mortgage payments (line 42) and chapter 13 administrative expenses (line 45).

Debtors financed their vehicles with a third mortgage through Veridian Credit Union. They have reaffirmed this debt. The July 20, 2005 promissory note with Veridian is secured by Debtors' 2005 Ford F150, 2003 Ford Explorer and residential real estate. Debtors testified that Veridian suggested the third mortgage as a way to reduce the interest rate on their car loan. The amounts due on the first two mortgages on Debtors' real estate exceed the value of the property. Thus, Debtors have no equity in the real estate to secure the Veridian loan, although the loan remains secured by liens on Debtors' vehicles.

On Form 22A, as amended by Debtors on March 30, 2007, Debtors include the payment on the Veridian note as a debt secured by their home on Line 20B(b). In lines 23 and 24, Debtors claim expenses based on the IRS Transportation Standards, Ownership Costs for first and second cars. In contrast, as shown in Exhibit 2, the U.S. Trustee apportions the payment on the Veridian note between Debtors' two vehicles in lines 23(b) and 24(b). The U.S. Trustee asserts that Debtors are improperly double-dipping by including the Veridian payment as mortgage debt on line 20B(b) and additionally claiming car ownership costs under the IRS standards on lines 23 and 24.

Debtors include payments on four 401(k) loans at line 42, subsections c through f, on their amended Form 22A. These loans originated in April 2001, August 2005 and August 2006. See Exhibit C. Debtors testified that the 2001 loan constituted the down payment on their home. Debtors used the 2005 loans to repair their home and pay down credit card debt. Debtor Dayle Campbell testified he used the August 2006 loan to pay his portion of his daughter's educational expenses which were overdue.

2

The total of the four 401(k) loan payments Debtors list at line 42 of Form 22A is $889.25.[1] The U.S. Trustee does not include these amounts in the means test calculation. He argues that these loan payments are not properly listed as future payments on secured claims. According to Debtor's amended Form 22A, if these payments are included at line 42 of Form 22A, the presumption of abuse would not arise under § 707(b)(2). On Debtor's Amended Form 22A, line 50 is a negative number, i.e. Debtors have no monthly disposable income under § 707(b)(2).

Exhibit C lists the payment amounts and the number of payments left for each of Debtors' four 401(k) loans as of 2/28/2007. The number of payments left is based on Debtors' biweekly salary schedule. Converting the information on Exhibit C into monthly amounts for purposes of Form 22A, the Court calculates as follows:

| Original Loan Amount | Monthly Payment | Number of Months Remaining |
|---|---|---|
| $22,878.50 | $ 294.77 | 45 |
| 30,000.00 | 651.88 | 36 |
| 9,000.00 | 195.56 | 36 |
| 4,995.00 | 113.26 | 48 |
| Total | $1,255.47[2] | |

After 48 months, these four loans will be paid off. After 36 months, Debtors will no longer have 401(k) loan payments for two of the loans, totaling $847.44 per month.

### CONCLUSIONS OF LAW

The U.S. Trustee seeks dismissal of this case under both § 707(b)(2) (the means test) and § 707(b)(3)(B) (totality of the circumstances). Under the Bankruptcy Code as amended in 2005 (BAPCPA), there are three ways to pass the means test of § 707(b)(2):

---

[1] These loan payment amounts do not match the actual payment amounts shown in Exhibit C. The Court will assume the amounts Debtors list on Form 22A differ based on calculating the total amounts remaining due over 60 months and dividing by 60 as directed in the instructions to line 42 in Form 22A.

[2] This equals the total of the amounts Debtors list on Schedule I for monthly "Profit-sharing loans."

3

>   (1) Have an annualized [current monthly income] that is
>   below the state median income . . . or
>
>   (2) Exceed the median income [and] have sufficient
>   expense deductions to avoid creating the presumption of
>   abuse. . . or
>
>   (3) Exceed the median income, have the presumption of
>   abuse arise [and] rebut the presumption of abuse with
>   special circumstances.

In re Singletary, 354 B.R. 455, 462 (Bankr. S.D. Tex. 2006).

Even if a debtor avoids dismissal by passing the means test, dismissal may be appropriate under the abuse tests of § 707(b)(3).  This section provides that a case may be dismissed if "the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse" of the provisions of Chapter 7.  11 U.S.C. § 707(b)(3)(B).  A debtor's actual ability to pay is a relevant, if not primary, consideration under § 707(b)(3).  In re Lenton, 358 B.R. 651, 662-63 (Bankr. E.D. Pa. 2006) (collecting cases).  In examining the totality of the circumstances, the court considers the debtors actual and anticipated financial situation over the applicable Chapter 13 commitment period.  Id. at *10.

In this case, the parties do not dispute that Debtors' current monthly income is above the state median income.  Thus, pursuant to § 1325(b)(4)(A)(ii), Debtors' applicable Chapter 13 commitment period is 5 years.

Debtors argue that they pass the means test because, as shown on their Amended Form 22A, lines 48 and 49, their total deductions exceed current monthly income.  As discussed above, the U.S. Trustee disputes Debtors' claimed deductions for vehicle ownership expenses and 401(k) loan payments.  Debtors further argue that their 401(k) loans constitute "special circumstances" under § 707(b)(2)(B) sufficient to rebut any presumption of abuse.

The Court has reviewed the case law available on the issues raised by the parties.  Courts are split on the issue of whether a debtor may deduct the ownership expense on line 23 of Form 22A for vehicles for which the debtor does not make payments.  Compare In re Hardacre, 338 B.R. 718, 728 (Bankr. N.D. Tex. 2006) (holding that a debtor may not claim a standard ownerhsip deduction for a vehicle that is neither financed nor leased by

4

the debtor), with In re Hartwick, 352 B.R. 867, 869 (Bankr. D. Minn. 2006) (holding that debtors may deduct the higher of the IRS Standard amount or actual expense for vehicle ownership expense; this does not change where the actual expense is 0). These cases appear to be relevant to the controversy in this case regarding Debtors' vehicle ownership expenses.

Likewise, courts are split on whether 401(k) loan payments should be treated as payments on secured debts on Form 22A and whether the existence of such payments can constitute special circumstances. Compare In re Thompson, 350 B.R. 770, 776 (Bankr. N.D. Ohio 2006) (holding payments on 401(k) loan are "payments on account of secured debts" under § 707(b)(2)(A)(iii)), with McVay v. Otero, No. EP-06-CV-436-PRM, slip op. at 20 (W.D. Tex. April 26, 2007) (holding 401(k) monthly loan repayments are not "payments on account of secured debts").

This Court need not enter the fray regarding those issues, however, as it concludes that granting Debtors a discharge would be an abuse of the provisions of Chapter 7 under the totality of the circumstances. Pre-BAPCPA, some courts developed a "totality of the circumstances" approach when considering whether to dismiss a case for "substantial abuse" under the prior version of § 707(b). In re Mestemaker, 359 B.R. 849, 856 (Bankr. N.D. Ohio 2007). Bankruptcy courts have looked to pre-BAPCPA case law to construe the meaning of "totality of the circumstances" in the current version of § 707(b)(3). Id. (applying Sixth Circuit factors); In re Pfeifer, ___ B.R. __, 2007 WL 926387, *3 (Bankr. D. Mont. 2007) (applying Ninth Circuit factors).

In the Sixth Circuit, the first factor in the totality of the circumstances test is whether the debtor had the ability to repay debts out of future earnings. In re Krohn, 886 F.2d 123, 126 (6th Cir. 1989); cf. In re Koch, 109 F.3d 1285, 1288 (8th Cir. 1997) (pre-BAPCPA, finding ability to fund a Chapter 13 plan is the primary factor to consider under § 707(b)). Other factors relevant to determining whether a debtor is "needy" include:

> whether the debtor enjoys a stable source of future income, whether he is eligible for adjustment of his debts through Chapter 13 of the Bankruptcy Code, whether there are state remedies with the potential to ease his financial predicament, the degree of relief obtainable through private negotiations, and whether his expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities.

Krohn, 886 F.2d at 126-27; see also In re James, 345 B.R. 664, 667-68 (Bankr. N.D. Iowa 2006) (considering the totality of the circumstances and finding bad faith).

In Mestemaker, 359 B.R. at 857, the court dismissed the case under the totality of the circumstances, noting that the debtors were both employed, neither faced a decrease in income, they were eligible for Chapter 13 relief and could pay unsecured creditors 10% to 15% over 60 months. Likewise, in In re Zaporski, ___ B.R. ___, 2007 WL 1186032, *14-15 (Bankr. E.D. Mich. 2007), the court considered all of the debtor's circumstances in dismissing the case under § 707(b)(3)(B). It noted the debtor had substantial equity in his 401(k) plan and he was solvent on a balance sheet basis. The court stated that even if voluntary contributions to the debtor's 401(k) plan were not disposable income in a Chapter 13 case, it is still relevant that the debtor already had "a very substantial retirement nest egg set aside, with no evidence of an imminent retirement." Id. at 14.

In Lenton, 358 B.R. at 664, the court noted that the debtor's payroll deductions for 401(k) loans and contributions are untouchable in the context of a Chapter 13 plan. See 11 U.S.C. §§ 541(b)(7) and 1322(f) (stating these deductions shall not constitute disposable income). It calculated, however, that when the 401(k) loans were paid off within the five-year commitment period for a Chapter 13 plan, the debtor was capable of repaying a portion of his unsecured debts. Id. The court also emphasized the debtor's job stability, as he been employed for eighteen years. Id.

**ANALYSIS**

Debtors have gross annual income of over $100,000, have job stability and have many years before retirement. Considering the balance in their 401(k) plans of more than $550,000, Debtors have more assets than liabilities and are solvent on a balance sheet basis. They drive newer vehicles and live in a $185,000 house. On Schedule J, Debtors claim total expenses of $6,048.50, which is obviously not a bare bones budget for a family of four. Debtors did not file this case because of any unforseen or catastrophic event. Mr. Campbell testified that they got to the point of careless spending that snowballed on them. These are not the types of "needy" debtors for which a Chapter 7 discharge is meant.

When Debtors' 401(k) loans are paid off during the 60-month commitment period for a Chapter 13 plan, Debtors could make substantial payments toward their unsecured debts. During months

6

37 through 48 of a 60-month plan, Debtors could devote the $847.44 per month 401(k) loan payments to retire unsecured debt, and during months 49 through 60, the monthly amount would increase to $1,255.47.  If these amounts were paid into a Chapter 13 plan, a total of $23,132.01 would be available, or approximately 25% of Debtors' total unsecured debt of approximately $91,000.

Based on the foregoing, the Court concludes that this case should be dismissed under § 707(b)(3)(B).  The totality of the circumstances of Debtors' financial situation demonstrates granting Debtors a Chapter 7 discharge would be an abuse of the Bankruptcy Code.  The U.S. Trustee's Motion to Dismiss must be granted.

**WHEREFORE**, the U.S. Trustee's Motion to Dismiss is GRANTED.

**FURTHER**, Debtor shall have until May 25, 2007 within which to elect to convert to Chapter 13.

**FURTHER**, if Debtor fails to convert to Chapter 13 by that date, this case will be dismissed for abuse under § 707(b)(3)(B) without further notice or hearing.

DATED AND ENTERED:
May 7, 2007.

_____
PAUL J. KILBURG
U.S. BANKRUPTCY JUDGE